# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | |
|---|---|
| ADOLFO MORENO III, Individually and For Others Similarly Situated | **Case No. 3:23-cv-1525** |
| v. | Jury Trial Demanded |
| POWERGRID PARTNERS LTD. | FLSA Collective Action<br>Rule 23 Class Action |

## ORIGINAL CLASS & COLLECTIVE ACTION COMPLAINT

### SUMMARY

1.      Adolfo Moreno III (Moreno) brings this class and collective action lawsuit to recover unpaid wages and other damages from PowerGrid Partners Ltd. (PowerGrid).

2.      PowerGrid employed Moreno as one of its Straight Time Employees (defined below).

3.      PowerGrid paid Moreno and the other Straight Time Employees by the hour.

4.      The Straight Time Employees regularly worked more than 8 hours a day and 40 hours a week.

5.      But PowerGrid did not pay its Straight Time Employees overtime.

6.      Instead, PowerGrid paid the Straight Time Employees the same hourly rate for all hours worked, including those after 40 in a workweek (or "straight time for overtime").

7.      PowerGrid's uniform straight time for overtime pay scheme violates the Fair Labor Standards Act (FLSA), the Alaska Wage and Hour Act (AWHA), the Massachusetts Wage and Hour Law (MWHA), the New York Labor Law (NYLL), and the Vermont Minimum Wage Law (VMWL) by depriving the Straight Time Employees of the "time and a half" overtime pay they are owed for all hours worked after 40 in a workweek.

8. Similarly, PowerGrid's uniform straight time for overtime pay scheme also violates the AWHA by depriving the Straight Time Employees of "time and a half" overtime pay they are owed for all hours worked after 8 in a workday.

9. Further, in addition to failing to pay its Straight Time Employees overtime, PowerGrid also paid these employees per diems when they were assigned to work away from home.

10. But PowerGrid failed to include these per diems in calculating the Straight Time Employees' regular rates of pay for overtime purposes.

11. PowerGrid's uniform per diem pay scheme violates the FLSA, AWHA, MWHA, NYLL, and VMLW by depriving the Straight Time Employees of overtime wages at rates not less than 1.5 times their regular rates of pay—based on *all* renumeration received.

## JURISDICTION & VENUE

12. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

13. This Court has supplemental jurisdiction of the state-law subclass claims because these claims arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

14. This Court has general personal jurisdiction over PowerGrid because PowerGrid is a domestic limited liability company headquartered in Oregon, Ohio.

15. Venue is proper because PowerGrid maintains its headquarters in Oregon, Ohio, which is in this District and Division. 28 U.S.C. § 1391(b)(1).

## PARTIES

16. Moreno worked for PowerGrid as a Wind Turbine Technician from approximately June 2020 until July 2022.

17.     Throughout his employment, PowerGrid assigned Moreno to work on various projects across the county, including (but not limited to) projects in Alaska, Massachusetts, New York, Ohio, and Vermont.

18.     Throughout his employment, PowerGrid paid Moreno straight time for overtime.

19.     Throughout his employment, PowerGrid paid Moreno certain per diems when it assigned him to work on projects away from home.

20.     Moreno's written consent is attached as **Exhibit 1**.

21.     Moreno brings this action on behalf of himself and all other similarly situated employees who PowerGrid paid under its straight time for overtime pay scheme and/or per diem pay scheme.

22.     PowerGrid paid each of these employees the same hourly rate for all hours worked, including those worked after 40 hours in a workweek.

23.     PowerGrid paid each of these employees per diems when they were assigned to work on projects away from their homes.

24.     The FLSA Collective of similarly situated employees is defined as:

> **All PowerGrid employees who were paid straight time for overtime and/or received per diems at any time during the past 3 years ("FLSA Collective Members").**

25.     Moreno also seeks to represent such a class under the AWHA pursuant to FED. R. CIV. P. 23.

26.     The Alaska Class of similarly situated employees is denied as:

> **All PowerGrid employees who were paid straight time for overtime and/or received per diems while working in Alaska at any time during the past 2 years ("Alaska Class Members").**

27.     Moreno also seeks to represent such a class under the MWHA pursuant to FED. R. CIV. P. 23.

28.     The Massachusetts Class of similarly situated employees is denied as:

> **All PowerGrid employees who were paid straight time for overtime and/or received per diems while working in Massachusetts at any time during the past 3 years ("Massachusetts Class Members").**

29.     Moreno also seeks to represent such a class under the NYLL pursuant to FED. R. CIV. P. 23.

30.     The New York Class of similarly situated employees is denied as:

> **All PowerGrid employees who were paid straight time for overtime and/or received per diems while working in New York at any time during the past in the past 6 years and 228 days[1] ("New York Class Members").**

31.     Moreno also seeks to represent such a class under the VMWL pursuant to FED. R. CIV. P. 23.

32.     The Vermont Class of similarly situated employees is denied as:

> **All PowerGrid employees who were paid straight time for overtime and/or received per diems while working in Vermont at any time during the past 6 years ("Vermont Class Members").**

33.     The FLSA Collective Members, Alaska Class Members, Massachusetts Class Members, New York Class Members, and Vermont Class Members are collectively referred to as the "Straight Time Employees."

---

[1] The statute of limitations was tolled 228 days due to Governor Cuomo's Executive Order 202.8 (2020) and subsequent orders Executive Orders 202.14, 202.28, 202.38, 202.48, 202.55.1, 202.60, and 202.67. In total, the Executive Orders were effective and implemented tolling for 228 days, from March 20th to November 3, 2020. *See McLaughlin v. Snowlift Inc.*, 71 Misc. 3d 1226(A) (Sup. Ct., Kings County 2021) (calculating that, together, the Executive Orders lasted 228 days).

34.     PowerGrid is an Ohio limited liability company that maintains its headquarters in Oregon, Ohio.

35.     PowerGrid can be served with process by serving its registered agent: **John R. Fellhauer, 2064 Blanche Drive, Oregon, Ohio 43616,** or wherever he may be found.

### COVERAGE UNDER THE FLSA

36.     At all relevant times, PowerGrid was an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

37.     At all relevant times, PowerGrid was an "enterprise" within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

38.     At all relevant times, PowerGrid was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as cell phones, tools, and personal protective equipment—that have been moved in or produced for commerce.

39.     At all relevant times, PowerGrid has had an annual gross volume of sales made or business done of not less than $500,000 each year.

40.     At all relevant times, the Straight Time Employees were PowerGrid's "employees" within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

41.     At all relevant times, the Straight Time Employees were engaged in commerce or in the production of goods for commerce.

42.     PowerGrid uniformly paid the Straight Time Employees the same hourly rate for all hours worked, including those after 40 in a workweek.

5

43.     As a result of PowerGrid's uniform straight time for overtime pay scheme, the Straight Time Employees (which, as noted above, include Moreno) did not receive overtime at the premium rates required by the FLSA.

44.     PowerGrid applied its illegal straight time for overtime pay scheme to the Straight Time Employees regardless of any alleged individualized factors, such as specific job title or precise geographic location.

45.     By paying the Straight Time Employees straight time for overtime, PowerGrid did not pay the Straight Time Employees at least 1.5 times their regular rates of pay for all hours worked after 40 in a workweek.

46.     PowerGrid's uniform straight time for overtime pay scheme therefore violates the FLSA. 29 U.S.C. § 207(a) & (e).

47.     Further, PowerGrid uniformly paid the Straight Time Employees per diems when it assigned them to work on projects away from their homes.

48.     But PowerGrid failed to include these per diems in calculating the Straight Time Employees' regular rates of pay for overtime purposes.

49.     As a result, PowerGrid did not pay the Straight Time Employees overtime wages at rates not less than 1.5 times their regular rates of pay—based on *all* renumeration received—for all hours worked after 40 in a workweek.

50.     PowerGrid's uniform per diem pay scheme therefore violates the FLSA. 29 U.S.C. § 207(a) & (e).

**FACTS**

51.    PowerGrid offers wind turbine services to clients across the country.[2]

52.    To meet its business objectives, PowerGrid hires workers, like the Straight Time Employees, who it assigns to provide wind turbine services to its clients.

53.    PowerGrid pays its Straight Time Employees on an hourly basis.

54.    PowerGrid routinely schedules its Straight Time Employees to work more than 8 hours in a day and 40 hours a week.

55.    Instead of paying its Straight Time Employees at 1.5 times their regular rates of pay for hours worked after 8 in a workday and/or 40 in a workweek, PowerGrid pays them same hourly rate for all hours worked.

56.    While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal pay practice for similar work.

57.    For example, Moreno worked for PowerGrid as a Wind Turbine Technician from approximately June 2020 until July 2022.

58.    As a Wind Turbine Technician, Moreno's primary responsibilities included installing and repairing wind turbines for PowerGrid's clients across the county, including (but not limited to) for clients in Alaska, Massachusetts, New York, Ohio, and Vermont.

59.    PowerGrid paid him under its illegal straight time for overtime pay scheme.

60.    Specifically, PowerGrid required Moreno (as well as the other Straight Time Employees) to record their hours worked and paid him the same hourly rate (ranging from $19-$24/hour) for all hours worked, including those worked after 8 in a workday and 40 in a workweek.

---

[2] https://www.powergridpartners.com/ (last visited August 4, 2023).

61.     For example, during the two-week pay period ending on June 11, 2022, Moreno worked 155 hours in Alaska.

62.     But PowerGrid only paid him the same hourly rate ($22/hour) for all hours worked, including those worked after 8 in a workday and 40 in a workweek:



63.     Similarly, during the two-week pay period ending on March 20, 2021, Moreno worked 112 hours, some of which were in Massachusetts.

64.     But PowerGrid only paid him the same hourly rate ($24/hour) for all hours worked, including those worked after 40 in a workweek:



65.     Likewise, during the two-week pay period ending on October 31, 2022, Moreno worked 114 hours in New York and Vermont.

66.     But PowerGrid only paid him the same hourly rate ($23/hour) for all hours worked, including those worked after 40 in a workweek:



67.     PowerGrid requires all Straight Time Employees to record the number of hours they work.

68.     PowerGrid never paid the Straight Time Employees on a "salary basis."

69.     PowerGrid did not pay its Straight Time Employees a guaranteed salary that was not subject to deductions.

70.     If the Straight Time Employees work fewer than 40 hours, PowerGrid only pays them for the hours they actually work.

71.     For example, during the two-week pay period ending on July 11, 2020, Moreno only worked 35 hours, and PowerGrid only paid him for his actual hours worked:



72.     But Moreno and the other Straight Time Employees regularly work more than 8 hours in a workday and 40 hours in a workweek.

73.     Moreno worked more than 8 hours in a workday and 40 hours in at least one workweek during the two years before this Complaint was filed.

74.     Likewise, each Straight Time Employee worked more than 8 hours in a workday and 40 hours in at least one workweek during the two years before this Complaint was filed.

75.     Indeed, Moreno and the Straight Time Employees typically work 10+ hours a day, for 7 days a week.

76.     Moreno and the other Straight Time Employees work in accordance with the schedule set by PowerGrid (and/or its clients).

77.     When Moreno and the Straight Time Employees work more than 8 hours in a workday or 40 hours in a workweek, PowerGrid does not pay them overtime at rates not less than 1.5 times their regular rates of pay.

78.     PowerGrid only pays Moreno and the Straight Time Employees straight time for overtime (plus, if traveling, per diems).

79.     Despite misclassifying Moreno and the Straight Time Employees as exempt, Moreno and the other Straight Time Employees primarily perform non-exempt job duties.

80.     The Straight Time Employees' primary duties do not include supervising other PowerGrid employees.

81.     The Straight Time Employees' primary duties are not management.

82.     The Straight Time Employees' primary duties do not require the exercise of independent judgment or discretion with respect to matters of significance.

83.     Rather, the Straight Time Employees' primary duties are routine and largely governed by standardized plans, procedures, and checklists created by PowerGrid.

84.     Virtually every job function is predetermined by PowerGrid, including the tools and equipment used at the job site, the data to compile, the schedule of work, and related work duties.

85.     In sum, Moreno and the Straight Time Employees are non-exempt employees and, therefore, entitled to overtime wages.

86.     But PowerGrid does not pay these non-exempt employees, including Moreno and the other Straight Time Employees, overtime wages when they work more than 8 hours in a workday and/or 40 hours in a workweek.

87.     Finally, in addition to failing to pay its Straight Time Employees overtime, PowerGrid also pays these employees per diems when they are assigned to work away from home.

88.     But PowerGrid fails to include these per diems in calculating the Straight Time Employees' regular rates of pay for overtime purposes.

89.     Instead, PowerGrid only pays its Straight Time Employees straight time for overtime.

90.     As a result of PowerGrid's uniform straight time for overtime and per diem pay schemes, the Straight Time Employees do not receive overtime wages at rates not less than 1.5 times their regular rates of pay—based on *all* renumeration received—for the overtime hours they regularly work.

### CLASS & COLLECTIVE ACTION ALLEGATIONS

91.     Moreno incorporates all other paragraphs by reference.

92.     Moreno brings his claims as a class and collective action on behalf of himself and the other Straight Time Employees.

93.     The Straight Time Employees are uniformly victimized by PowerGrid's straight time for overtime and/or per diem pay schemes, which are in willful violation of the FLSA, AWHA, MWHA, NYLL, and VMLW.

11

94.     Other Straight Time Employees worked with Moreno and indicated they were paid in the same manner, performed similar work, and were subject to PowerGrid's same straight time for overtime and/or per diem pay schemes.

95.     Based on his experience with PowerGrid, Moreno is aware PowerGrid's illegal practices were imposed on the Straight Time Employees.

96.     The Straight Time Employees are similarly situated in all relevant respects.

97.     Even if their precise job duties and locations might vary, these differences do not matter for the purposes of determining their entitlement to overtime.

98.     Any relevant exemption defenses would require PowerGrid to pay the Straight Time Employees on a salary basis.

99.     Because PowerGrid fails the salary basis test with respect to the Straight Time Employees, the specific job duties performed by those employees are largely irrelevant.

100.    The relevant job duty is whether the Straight Time Employees worked more than 40 hours in a week (which, by definition, they did).

101.    Therefore, the specific job titles or precise job locations of the various Straight Time Employees do not prevent class or collective treatment.

102.    Rather, PowerGrid's uniform straight time for overtime and per diem pay schemes render Moreno and the other Straight Time Employees similarly situated for the purposes of determining their right to overtime pay.

103.    PowerGrid's records reflect the number of hours worked each week by the Straight Time Employees.

104.    PowerGrid's records also show the Straight Time Employees were paid "straight time," instead of "time and a half," for their overtime hours.

12

105.    Likewise, PowerGrid's records show it paid the Straight Time Employees per diems that it failed to include in calculating these employees' regular rates of pay for overtime purposes.

106.    The back wages owed to Moreno and the other Straight Time Employees can be calculated using the same formula applied to the same records.

107.    Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to PowerGrid's records, and there is no detraction from the common nucleus of liability facts.

108.    Therefore, the issue of damages does not preclude class or collective treatment.

109.    Moreno's experiences are therefore typical of the experiences of the Straight Time Employees.

110.    Moreno has no interest contrary to, or in conflict with, the Straight Time Employees that would prevent class or collective treatment.

111.    Like each Straight Time Employee, Moreno has an interest in obtaining the unpaid wages owed under federal and/or state law.

112.    A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

113.    Absent this class and collective action, many Straight Time Employees will not obtain redress for their injuries, and PowerGrid will reap the unjust benefits of violating the FLSA, AWHA, MWHA, NYLL, and VMLW.

114.    Further, even if some of the Straight Time Employees could afford individual litigation, it would be unduly burdensome to the judicial system.

115.    Concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Straight Time Employees' claims.

13

116.     The questions of law and fact that are common to each Straight Time Employee predominate over any questions affecting solely the individual members.

117.     Among the common questions of law and fact are:

a.      Whether PowerGrid applied its straight time for overtime pay scheme uniformly to the Straight Time Employees;

b.      Whether PowerGrid misclassified Moreno and the Straight Time Employees as exempt from the FLSA's, AWHA's, MWHA's, NYLL's, and/or VMLW's overtime provisions;

c.      Whether Moreno and the Straight Time Employees are non-exempt employees entitled to overtime wages;

d.      Whether PowerGrid's straight time for overtime pay scheme satisfies the "salary basis" test;

e.      Whether PowerGrid's straight time for overtime pay scheme deprived Moreno and the Straight Time Employees of premium overtime wages they are owed under the FLSA, AWHA, MWHA, NYLL, and/or VMLW;

f.      Whether PowerGrid applied its per diem pay scheme uniformly to the Straight Time Employees;

g.      Whether PowerGrid failed to include the Straight Time Employees' per diems in calculating these employees' regular rates of pay for overtime purposes;

h.      Whether PowerGrid's per diem pay scheme deprived Moreno and the Straight Time Employees of overtime wages at the proper premium rate in violation of the FLSA, AWHA, MWHA, NYLL, and/or VMLW;

     i.      Whether PowerGrid's violations of the FLSA, AWHA, MWHA, NYLL, and VMLW resulted from a continuing course of conduct;

     j.      Whether PowerGrid's decision to classify Moreno and the Straight Time Employees as exempt from overtime was made in good faith;

     k.      Whether PowerGrid's decision not to pay Moreno and the Straight Time Employees overtime was made in good faith;

     l.      Whether PowerGrid's decision not to include Moreno's and the Straight Time Employees' per diems in calculating their regular rates of pay for overtime purposes was made in good faith; and

     m.     Whether PowerGrid's violations of the FLSA, AWHA, MWHA, NYLL, and/or VMLW were willful.

118.    Moreno knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

119.    As part of its regular business practices, PowerGrid intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA, AWHA, MWHA, NYLL, and/or VMLW with respect to the Straight Time Employees.

120.    PowerGrid's illegal straight time for overtime and per diem pay schemes deprived Moreno and the other Straight Time Employees of the premium overtime wages they are owed under state and/or federal law.

121.    There are many similarly situated Straight Time Employees who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

122. This notice should be sent to the Straight Time Employees pursuant to 29 U.S.C. § 216(b).

123. The Straight Time Employees are known to PowerGrid, are readily identifiable, and can be located through PowerGrid's business and personnel records.

### POWERGRID'S VIOLATIONS WERE WILLFUL AND/OR DONE IN RECKLESS DISREGARD OF THE FLSA, AWHA, MWHA, NYLL, AND/OR VMLW

124. Moreno incorporates all other paragraphs by reference.

125. PowerGrid knew it was subject to the FLSA's, AWHA's, MWHA's, NYLL's, and VMLW's respective overtime provisions.

126. PowerGrid knew the FLSA, AWHA, MWHA, NYLL, and VMLW required it to pay non-exempt employees, including the Straight Time Employees, overtime wages at rates not less than 1.5 times their regular rates of pay—based on *all* renumeration received—for all hours worked after 40 in a workweek.

127. PowerGrid knew the AWHA also required it to pay non-exempt employees, including the Straight Time Employees, overtime wages at rates not less than 1.5 times their regular rates of pay—based on *all* renumeration received—for all hours worked after 8 in a workday.

128. PowerGrid knew it paid the Straight Time Employees per diems.

129. PowerGrid knew the FLSA, AWHA, MWHA, NYLL, and VMLW required it to include the Straight Time Employees' per diems as renumeration received in calculating these employees' regular rates of pay for overtime purposes.

130. Nonetheless, PowerGrid failed to include the Straight Time Employees' per diems in calculating these employees' regular rates of pay for overtime purposes.

131.    PowerGrid's decision not to include the Straight Time Employees' per diems in calculating these employees' regular rates of pay for overtime purposes was neither reasonable, nor was the decision not to include the Straight Time Employees' per diems in calculating these employees' regular rates of pay for overtime purposes made in good faith.

132.    PowerGrid knew each Straight Time Employee worked more than 40 hours in at least one workweek during the two years before this Complaint was filed because it expected and required these workers to do so.

133.    PowerGrid knew each Straight Time Employee worked more than 8 hours in at least one workday during the two years before this Complaint was filed because it expected and required these workers to do so.

134.    PowerGrid knew the Straight Time Employees were its hourly employees.

135.    PowerGrid knew it paid the Straight Time Employees on an hourly basis.

136.    PowerGrid knew it paid the Straight Time Employees straight time for overtime.

137.    PowerGrid knew it did not pay the Straight Time Employees on a "salary basis."

138.    PowerGrid knew it did not pay the Straight Time Employees any guaranteed salary that was not subject to deduction based on the number of hours or days worked.

139.    PowerGrid knew its straight time for overtime pay scheme did not satisfy the salary basis test.

140.    PowerGrid knew it needed to pass the salary basis test to qualify for the exemptions it claimed with respect to the Straight Time Employees.

141.    PowerGrid knew the Straight Time Employees' primary duties do not include supervising any PowerGrid employees.

142.    PowerGrid knew Moreno and the Straight Time Employees' primary duties were not management.

143.    PowerGrid knew the Straight Time Employees' primary duties do not include exercising independent discretion or judgment with respect to matters of significance.

144.    PowerGrid knew the Straight Time Employees primarily performed non-exempt work.

145.    Nonetheless, PowerGrid uniformly misclassified the Straight Time Employees as exempt and refused to pay them overtime.

146.    PowerGrid's decision to misclassify Moreno and the Straight Time Employees as exempt employees was neither reasonable, nor was the decision to misclassify these employees as exempt made in good faith.

147.    Likewise, PowerGrid's failure to pay Moreno and the Straight Time Employees overtime compensation was neither reasonable, nor was the decision not to pay these employees overtime compensation made in good faith.

148.    PowerGrid knew, should have known, or showed reckless disregard for whether the conduct described in this Complaint violated the FLSA, AWHA, MWHA, NYLL, and VMLW.

<u>COUNT I</u>

**FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA**
**(FLSA COLLECTIVE)**

149.    Moreno incorporates all other paragraphs by reference.

150.    Moreno brings his FLSA claims as a collective action on behalf of himself and the other FLSA Collective Members.

151.     PowerGrid violated, and is violating, the FLSA by employing the FLSA Collective Members in a covered enterprise for workweeks longer than 40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay—based on all renumeration received—for the hours they worked after 40 in a workweek.

152.     PowerGrid's unlawful conduct harmed Moreno and the other FLSA Collective Members by depriving them of the overtime wages they are owed.

153.     Accordingly, Moreno and the FLSA Collective Members are entitled to overtime wages under the FLSA in an amount equal to 1.5 times their regular rates of pay, plus an equal amount as liquidated damages, as well as attorney's fees and costs.

### COUNT II
### FAILURE TO PAY OVERTIME WAGES UNDER THE AWHA
### (ALASKA CLASS)

154.     Moreno incorporates all other paragraphs by reference.

155.     Moreno brings his AWHA claims as a class action on behalf of himself and the other Alaska Class Members pursuant to FED. R. CIV. P 23.

156.     At all relevant times, PowerGrid was an "employer" within the meaning of the AWHA. *See* AS § 23.10.145.

157.     At all relevant times, PowerGrid employed Moreno and the Alaska Class Members as covered "employees" within the meaning of the AWHA. *See* AS § 23.10.145.

158.     The AWHA requires employers, like PowerGrid, to pay employees, including Moreno and the Alaska Class Members, overtime wages at rates not less than 1.5 the employee's regular rate of pay—based on all renumeration received—for all hours worked after 8 in a workday and 40 in a workweek. *See* AS § 23.10.060.

159.     PowerGrid violated, and is violating, the AWHA by employing the Alaska Class Members in a covered enterprise for workdays longer than 8 hours and workweeks longer than 40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay for the hours they worked after 8 in a workday and 40 in a workweek.

160.     PowerGrid's unlawful conduct harmed Moreno and the other Alaska Class Members by depriving them of the overtime wages they are owed.

161.     Accordingly, Moreno and the Alaska Class Members are entitled to overtime wages under the AWHA in an amount equal to 1.5 times their regular rates of pay, plus an equal amount as liquidated damages, as well as attorney's fees and costs. *See* AS § 23.10.110.

<u>**COUNT III**</u>

**FAILURE TO PAY OVERTIME WAGES UNDER THE MWHA**
**(MASSACHUSETTS CLASS)**

162.     Moreno incorporates all other paragraphs by reference.

163.     Moreno brings his MWHA claims as a class action on behalf of himself and the other Massachusetts Class Members pursuant to FED. R. CIV. P 23.

164.     At all relevant times, PowerGrid was an "employer" within the meaning of the MWHA. *See* M.G.L. 151 § 2.

165.     At all relevant times, PowerGrid employed Moreno and the Massachusetts Class Members as covered "employees" within the meaning of the MWHA. *See* M.G.L. 151 § 2.

166.     The MWHA requires employers, like PowerGrid, to pay employees, including Moreno and the Massachusetts Class Members, overtime wages at rates not less than 1.5 the employee's regular rate of pay—based on all renumeration received—for all hours worked after 40 in a workweek. *See* M.G.L. 151 § 1A.

167.     PowerGrid violated, and is violating, the MWHA by employing the Massachusetts Class Members in a covered enterprise for workweeks longer than 40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay for the hours they worked after 40 in a workweek.

168.     PowerGrid's unlawful conduct harmed Moreno and the other Massachusetts Class Members by depriving them of the overtime wages they are owed.

169.     Accordingly, Moreno and the Massachusetts Class Members are entitled to overtime wages under the MWHA in an amount equal to 1.5 times their regular rates of pay, plus treble damages, as well as attorney's fees and costs. *See* M.G.L. 151 § 1B.

## COUNT IV

### FAILURE TO PAY OVERTIME WAGES UNDER THE NYLL
### (NEW YORK CLASS)

170.     Moreno incorporates all other paragraphs by reference.

171.     Moreno brings his NYLL claims as a class action on behalf of himself and the other New York Class Members pursuant to FED. R. CIV. P 23.

172.     At all relevant times, PowerGrid was an "employer" within the meaning of the NYLL and its implementing regulations. *See* NYLL §§ 190(3) and 651(6).

173.     At all relevant times, PowerGrid employed Moreno and the New York Class Members as covered "employees" within the meaning of the NYLL and its implementing regulations. *See* NYLL §§ 190(2) and 651(5); 12 NYCRR 142-2.14.

174.     The NYLL and its implementing regulations require employers, like PowerGrid, to pay employees, including Moreno and the New York Class Members, overtime wages at rates not less

than 1.5 the employee's regular rate of pay—based on all renumeration received—for all hours worked after 40 in a workweek. *See* NYLL §§ 190, *et seq.*; NYLL §§ 650, *et seq.*; 12 NYCRR 142-2.

175.    PowerGrid violated, and is violating, the NYLL by employing the New York Class Members in a covered enterprise for workweeks longer than 40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay for the hours they worked after 40 in a workweek.

176.    PowerGrid's unlawful conduct harmed Moreno and the other New York Class Members by depriving them of the overtime wages they are owed.

177.    Accordingly, Moreno and the New York Class Members are entitled to overtime wages under the NYLL in an amount equal to 1.5 times their regular rates of pay, plus an equal amount as liquidated damages, as well as attorney's fees and costs. *See* NYLL §§ 198 and 663.

## COUNT V
### FAILURE TO PAY OVERTIME WAGES UNDER THE VMWL
### (VERMONT CLASS)

178.    Moreno incorporates all other paragraphs by reference.

179.    Moreno brings his VMWL claims as a class action on behalf of himself and the other Vermont Class Members pursuant to FED. R. CIV. P 23.

180.    At all relevant times, PowerGrid was an "employer" within the meaning of the VMWL.

181.    At all relevant times, PowerGrid "employed" Moreno and the Vermont Class Members as covered "employees" within the meaning of the VMWL. *See* 21 V.S.A. § 383(2).

182.    The VMWL requires employers, like PowerGrid, to pay employees, including Moreno and the Vermont Class Members, overtime wages at rates not less than 1.5 the employee's regular rate

of pay—based on all renumeration received—for all hours worked after 40 in a workweek. *See* 21 V.S.A. § 384(b).

183.    PowerGrid violated, and is violating, the VMWL by employing the Vermont Class Members in a covered enterprise for workweeks longer than 40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay for the hours they worked after 40 in a workweek.

184.    PowerGrid's unlawful conduct harmed Moreno and the other Vermont Class Members by depriving them of the overtime wages they are owed.

185.    Accordingly, Moreno and the Vermont Class Members are entitled to overtime wages under the VMWL in an amount equal to 1.5 times their regular rates of pay, plus an equal amount as liquidated damages, as well as attorney's fees and costs. *See* 21 V.S.A. § 395.

JURY DEMAND

186.    Moreno demands a trial by jury.

RELIEF SOUGHT

WHEREFORE, Moreno individually, and on behalf of the Straight Time Employees, seeks the following relief:

a.    An Order designating this lawsuit as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) be sent to the FLSA Collective Members allowing them to join this action by filing a written notice of consent;

b.    An Order designating this lawsuit as a class action pursuant to FED. R. CIV. P. 23;

c.    An Order appointing Moreno and his counsel to represent the interests of the Straight Time Employees;

d.     An Order pursuant to Section 16(b) of the FLSA finding PowerGrid liable for unpaid overtime wages due to Moreno and the FLSA Collective Members, plus liquidated damages in amount equal to their unpaid wages;

e.     An Order pursuant to the AWHA finding PowerGrid liable for unpaid overtime wages due to Moreno and the Alaska Class Members, plus liquidated damages in amount equal to their unpaid wages;

f.     An Order pursuant to the MWHA finding PowerGrid liable for unpaid overtime wages due to Moreno and the Massachusetts Class Members, plus treble damages in amount equal to two times their unpaid wages;

g.     An Order pursuant to the NYLL finding PowerGrid liable for unpaid overtime wages due to Moreno and the New York Class Members, plus liquidated damages in amount equal to their unpaid wages;

h.     An Order pursuant to the VMWL finding PowerGrid liable for unpaid overtime wages due to Moreno and the Vermont Class Members, plus liquidated damages in amount equal to their unpaid wages;

i.     A Judgment against PowerGrid awarding Moreno and the Straight Time Employees all their unpaid overtime wages, liquidated damages, treble damages, and any other penalties available under the FLSA, AWHA, MWHA, NYLL, and/or VMWL;

j.     An Order awarding attorney's fees, costs, and expenses;

k.     Pre- and post-judgment interest at the highest applicable rates; and

l.     Such other and further relief as may be necessary and appropriate.

Dated: August 4, 2023.

Respectfully submitted,

**COFFMAN LEGAL, LLC**

By: */s/ Matthew J.P. Coffman*
      Matthew J.P. Coffman (0085586)
1550 Old Henderson Road, Suite 126
Columbus, Ohio 43220
614-949-1181 – Telephone
614-386-9964 – Facsimile
mcoffman@mcoffmanlegal.com
*Local Counsel for Plaintiff*

Michael A. Josephson*
TX Bar No. 24014780
Andrew W. Dunlap*
TX Bar No. 24078444
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch*
TX Bar No. 24001807
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

*Pro hac vice applications forthcoming*

**ATTORNEYS FOR PLAINTIFF &
THE PUTATIVE CLASS MEMBERS**

25